IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| Guillermo Trujillo Cruz,<br><br>                Plaintiff,<br><br>      v.<br><br>Jeffreys et al.,<br><br>                Defendants. | Case No.     15cv2826 JLS (PCL)<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE RE:**<br><br>**DEFENDANTS' MOTION TO DISMISS** |
|---|---|

     Plaintiff Guillermo Trujillo Cruz, a state prisoner proceeding *pro se*, filed a First Amended Complaint under the Civil Rights Act 42 U.S.C. §1983, alleging that three correctional officers, Defendants Jeffries, Rios, and Ramos, retaliated against him in 2010 and 2011 by reporting him to a mental health professional and setting him up to be assaulted. (Doc. 46.) Defendants have filed a motion to dismiss Plaintiff's First Amended Complaint, arguing that Plaintiff's claims are barred by the statute of limitations and that Plaintiff has failed to exhaust his administrative remedies prior to filing suit. (Doc. 47.) For the following reasons, the Court recommends granting in part Defendant's motion and dismissing the First Amended Complaint.

///

///

1

I. BACKGROUND

Serving a twenty-year sentence, Plaintiff is currently incarcerated at Pelican Bay State Prison. (Doc. 46, at 1.) At the times relevant to this action, Plaintiff was incarcerated at R.J. Donovan Correctional Facility (RJD) in San Diego, California. (Id.) Defendants Jeffries, Rios, and Ramos are correctional officers stationed at RJD. (Id.)

A. Allegations in Plaintiff's Complaint

In his original Complaint, Plaintiff alleged that in July 2010, he filed an inmate grievance alleging that certain unnamed male and female officers had failed to log into the E.R.M.S. System. (Doc. 1, at 3.) Plaintiff alleges that Defendants Jeffries and Rios reported him to the Mental Health Services Delivery System because he was hearing things and filing false 602 grievances. (Doc. 1, at 3.)

Plaintiff next alleges that on July 13, 2010, he was targeted for assault while on the prison recreation yard. (Doc. 1, at 3.) Plaintiff alleges that he "was unlawfully subjected to be targeted [in] an assault in retaliation for filing 602 grievances . . ." (Doc. 1, at 3.) Plaintiff alleges he was hit and punched in the face, causing bruising to his eye socket, a gash on his cheek bone, and bruising to his rib cage. (Id.) Plaintiff attaches to the Complaint his Rules Violation Report, which documents the incident. (Doc. 1, at 7.) The Rules Violation Report shows that Plaintiff was convicted of fighting with two other inmates. (Doc. 1, at 8.) The Report includes Plaintiff's statement that he was not involved in the fight but was over by the handball court, minding his own business. (Id.)

Plaintiff claims that he filed a 602 grievance form with the prison regarding the July 13, 2010 incident on the prison yard in which Plaintiff was convicted of fighting with two other inmates. (Doc. 1, at 4, 17.) Plaintiff also claims to have submitted a 602 form purportedly filed on July 5, 2010 in which Plaintiff states that Defendant Jeffries called him a "punk" for filing 602 forms and claims that Jeffries "tried to get him to fight with other inmates." (Doc. 36, at 11.) Plaintiff also purportedly described

2

in writing that Defendant Rios "instigate[d]" him to start a fight with other inmates on July 1, 2010 for "reporting employee sexual misconduct on correctional females." (Doc. 36, at 12.) Plaintiff states that prison officials did not respond to his grievance forms. (Doc. 1, at 4.) Plaintiff also states that on March 26, 2011 he filed a government claim form to obtain compensation damages for injuries and the pain he suffered. (Doc. 1, at 3.)

Plaintiff's complaint, containing claims against Defendants Rios, Jeffries, and Ramos for retaliation under the First Amendment, failure to protect under the Eighth Amendment, and violation of due process under the Fourteenth Amendment, was filed on December 15, 2015. (Doc. 1.) Plaintiff signed his complaint on December 9, 2015, but the envelope in which it was mailed was signed by a correctional officer on December 8, 2015 and shows a postage date of December 10, 2015. (Doc. 1, at 6, 19, 20.)

B. Allegations in Plaintiff's First Amended Complaint

In his First Amended Complaint, Plaintiff initially alleges that Defendants retaliated against him on July 9, 2010 and through July 13, 2010. (Doc. 46, at 2.) Plaintiff then alleges that in July 2011, Defendants Jeffries and Rios stopped by his cell, swore at him, and claims that Plaintiff had made false allegations against them in prison grievances. (Doc. 46, at 3.) Plaintiff alleges that Jeffries and Rios then walked down the tier questioning other inmates, ordered the inmates to assault him, and offered a reward for assaulting him. (Id.)

Plaintiff alleges that Jeffries referred Plaintiff to mental health services "to cover up his illegal verbal threats towards Plaintiff." (Id.) Plaintiff alleges that this occurred "later in the week" but also alleges that it occurred on July 8, 2010. (Id.) Plaintiff alleges that "two days later," "on July 13, 2011," Plaintiff was assaulted on Jeffries, Rios and Ramos's orders. (Id.) Plaintiff alleges he suffered a black eye, a gash to the right cheek, and bruises to his rib cage. (Id. at 4.) Plaintiff has increased his demand for damages to $50,000 per Defendant, but he continues to claim $60,000

in punitive damages. (Id. at 5.)

Plaintiff alleges in his First Amended Complaint that he filed a prison appeal on July 9, 2010, but never received a response from the appeals coordinator at RJD. (Doc. 46, at 4.) Plaintiff alleges that it took him five years to finally finish exhausting his appeal, completing the process at the third level of review on June 6, 2017, more than a year after filing his original Complaint. (Id.) Plaintiff has attached an appeal dated May 1, 2016, in which he alleges that Defendants Jeffries and Rios set him up to be attacked. (Id. at 13-14.) This appeal was screened out as untimely. (Id. at 18.) Plaintiff then appealed the screened-out appeal on June 29, 2016. (Id. at 9.) This appeal was accepted and denied at the third level of review on June 6, 2017. (Id. at 7.)

II. STANDARD OF REVIEW

A motion to dismiss a complaint under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of plaintiff's claims. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The Court must assume the truth of the facts presented in Plaintiff's complaint and construe inferences from them in the light most favorable to the nonmoving party when reviewing a motion to dismiss under Rule 12(b)(6). Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 1987). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Id.

A motion to dismiss may be based on the running of the statute of limitations period if the running of the statute is apparent on the face of the complaint. See Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). Section 1983 claims are governed by the forum state's statute of limitations for personal injury actions, and the days start to accrue when the plaintiff knows or should know of the injury that is the basis of the claim. Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009). The applicable statute of limitations under California law is two years. Cal. Civ. Proc.

4

Code section 335.1; see Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). Additionally, California law tolls the statute of limitations for up to two years based on the disability of imprisonment for inmates serving less than life terms. Cal. Civ. Proc. Code section 352.1; Jones, 393 F.3d at 927. The effective statute of limitations for an action by a prisoner under 42 U.S.C. section 1983 is therefore up to four years notwithstanding the fact that "[t]he applicable statute of limitations is tolled when a prisoner completes the mandatory exhaustion process." Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005).

To ensure further fairness, California law also provides for equitable tolling to extend the statute of limitations under certain circumstances. Jones, 393 F.3d at 928. "[T]hree conditions must be met to toll the statute of limitations: (1) defendant must have had a timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir. 1988). The effect of equitable tolling is that the limitations period stops running during a tolling event and begins to run again only when the tolling event has concluded. See Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003). The tolled interval is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred. See id. at 370-71. Application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claims against the effect upon the important public interest or policy expressed by the limitations statute. See id. at 371. A federal court must determine on a motion to dismiss "whether the complaint liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993). However, the question of whether the doctrine of equitable tolling applies normally requires reference to matter outside the pleadings and is not generally amenable to

resolution on a Rule 12(b)(6) motion to dismiss. Id. at 1276. Only in instances where there are facts evident from the face of the complaint that support the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue will a court rule on the statute of limitations defense on a 12(b)(6) motion. Id.

Moreover, the Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a § 1983 action in federal court. See 42 U.S.C. § 1997e(a). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (quoting Booth v. Churner, 532 U.S. 731, 739-41 (2001)). The Ninth Circuit has held that "defendants have the burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (overruled on other grounds). This burden requires defendants to demonstrate that the inmate has failed to pursue some avenue of "available" administrative relief. Brown, 422 F.3d at 936-37. Because "failure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints," the defendant in a typical PLRA case will have to present probative evidence that the prisoner has failed to exhaust available administrative remedies under § 1997e(a). If in the rare case a prisoner's failure to exhaust is clear from the face of the complaint, a "defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014).

Finally, if a complaint is found to fail to state a claim or is statutorily barred, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegations of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

///

///

### III. DISCUSSION

Defendants argue in their motion to dismiss that Plaintiff's claims are barred by the statute of limitations. (Doc. 47, at 2.) Defendants also argue that Plaintiff failed to plead facts that would equitably toll the statute of limitations. (Id.) Furthermore, Defendants argue that Plaintiff's case is premature because Plaintiff did not finally exhaust his remedies until 2016 or 2017, after he filed suit. (Id. at 9.)

#### A. Statute of limitations

Defendants argue that Plaintiff's section 1983 claims against them should be dismissed for being time-barred by section 335.1 of California's Code of Civil Procedure, which sets a two-year statute of limitations period for personal injury claims. (Doc. 47.) California law tolls the statute of limitations for up to two years based on the disability of imprisonment for inmates serving terms less than life terms. Cal. Civ. Proc. Code § 352.1; Jones, 393 F.3d at 927. As Plaintiff, who is not serving a life term, filed his complaint on December 15, 2015 on actions that occurred in July of 2010 and July of 2011, Plaintiff's claims, which should have been filed by July 2015 at the latest, are therefore time barred, unless another type of tolling applies.

On Defendant's motion to dismiss, however, the Court cannot rule on the factual question of the applicability of tolling at this time because it is not clear from the face of Plaintiff's First Amended Complaint that Plaintiff could not prevail, as a matter of law, on the statute of limitations issue. Plaintiff has presented conflicting evidence as to the reasons for the delay in exhausting his remedies through the third level of administrative review at RJD prison. Plaintiff has alleged that he filed a prison appeal on July 9, 2010 but never received a response from the appeals coordinator at RJD. (Doc. 46, at 4.) Plaintiff attaches an appeal dated May 1, 2016, in which he alleges that Defendant Jeffries and Rios set him up to be attacked. (Doc. 46, at 13-14.) This appeal shows that it was screened out as untimely. (Doc. 46, at 18.) Plaintiff then states that he allegedly appealed this screened-out appeal on June 29, 2016. (Doc. 46, at 9.) This appeal shows that it was finally accepted at the third level of review but it

was denied on June 6, 2017. (Doc. 46, at 7.) The third level appeal decision notes that it was "appellant's position that [his appeal] was cancelled in error." (Doc. 46, at 8.) But the decision states that no relief can be granted to appellant after a review of the facts presented. (Doc. 46, at 8.)

Under this factual scenario, the Court finds that it is not clear on the face of Plaintiff's First Amended Complaint the extent to which the statute of limitations period should be tolled while Plaintiff exhausted his administrative remedies and how much equitable tolling should be afforded to Plaintiff based on the level of effort he made at the administrative level of review to resolve his claims. Thus, the Court recommends denying Defendants' motion to dismiss Plaintiff's amended complaint on statute of limitations grounds.

B. Timing of Exhaustion

A prison inmate must exhaust his administrative remedies before filing a lawsuit. 42 U.S.C. 1997e(a); McKinney v. Carey, 311 F3.d 1198, 1199 (9th Cir. 2002). In McKinney, the Ninth Circuit held "that § 1997e(a) requires exhaustion before the filing of a complaint and that a prisoner does not comply with this requirement by exhausting available remedies during the course of litigation." Id. at 1199. Similarly, in Vaden v. Summerhill, 449 F.3d 1047 (9th Cir. 2006), the Ninth Circuit held that a prisoner "may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed." Id. at 1151. Moreover, Defendants may successfully raise the affirmative defense of failure to timely exhaust administrative remedies on a motion to dismiss if Plaintiff's failure to exhaust is clear on the face of the complaint. Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014).

In this case, Plaintiff has alleged that it took him five years to finally finish exhausting his administrative remedies. (Doc. 46, at 7.) Plaintiff has also provided proof in his First Amended Complaint that he finally exhausted his administrative remedies on his claims on June 6, 2017, after he filed this lawsuit. (Doc. 46, at 4.) The third level appeal decision states that Plaintiff's issues "were appropriately reviewed

and evaluated by administrative staff." (Doc. 46, at 8.) The third level review also notes that Plaintiff was "unable to explain the delay in requesting the outcome of an appeal which the appellant contends was submitted in the year 2011." (Doc. 46, at 8.) For these reasons, the appeal states that relief can not be afforded to Plaintiff at the third level of review. (Doc. 46, at 8.)

Based on this evidence included in Plaintiff's First Amended Complaint, it is clear to the Court that Plaintiff did not file the director's level of appeal until after he filed this lawsuit. Thus, Plaintiff's filing of this action before the director's level appeal was filed and denied was improper. See King v. CDC, 2007 WL 2265106, at *1 (E.D. Cal. August 6, 2007). Accordingly, it is recommended that Defendants' motion to dismiss be granted on exhaustion grounds.

## IV. CONCLUSION

As it is clear from the face of Plaintiff's First Amended Complaint that he did not exhaust his administrative remedies until after he filed this action, Plaintiff's lawsuit should be dismissed without leave to amend because there is no way for Plaintiff to cure the timing issue with the instant lawsuit. Nevertheless, his case should be dismissed without prejudice as to any future lawsuit that Plaintiff may file in the future.

Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties on or before October 31, 2017. The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: October 13, 2017

Peter C. Lewis

United States District Court